James DUNBAR, Plaintiff,

v.

**PEPSI–COLA GENERAL BOTTLERS OF IOWA, INC., Defendant.**

No. C02–3038–MWB.

United States District Court, N.D. Iowa, Central Division.

Oct. 7, 2003.

Jackie D. Armstrong, Brown, Kinsey & Funkhouse, PLC, Mason City, IA, Lynne Jaben Bratcher, Bratcher & Gockel, LC, Kansas City, MO, for Plaintiff.

Kerrie M. Plummer, Lora L. McCollom, Gonzalez, Saggio & Harlan, LLP, West Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................1183
 A. Procedural Background ...........................................1183
 B. Factual Background .............................................1183

II. LEGAL ANALYSIS ...................................................1185
 A. Standards For Summary Judgment ................................1185
 B. Elements Of A Prima Facie Case Of Disparate Treatment ...............1186
 1. Dunbar's "qualification" ......................................1187
 2. Adverse employment action ....................................1188
 3. Treatment of similarly situated persons ...........................1189
 C. Further Showings ..............................................1190
 1. Desert Palace v. Costa and its impact............................1191
 a. The Supreme Court's decision ................................1191
 b. Responses of the lower courts ................................1192
 i. Dare v. Wal–Mart Stores, Inc. ............................1192
 ii. Other decisions .......................................1193

 *c.* *Analysis* ............................................ 1195
 2. *Application of the modified paradigm* ............................ 1198
 *a.* *Pepsi's legitimate, nondiscriminatory reasons* ................... 1198
 *b.* *Dunbar's showing of "intentional discrimination"* .............. 1198
 *i.* *Pretext alternative* ...................................... 1199
 *ii.* *Mixed-motive alternative* ............................... 1200

**III. CONCLUSION** ................................................ 1200

Among other issues, this case poses the question of what impact the Supreme Court's recent decision in *Desert Palace v. Costa*, 539 U.S. ——, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), has on the continued viability of the *McDonnell Douglas* burden-shifting paradigm for "circumstantial evidence" cases of employment discrimination. The plaintiff contends that, even if he cannot demonstrate "pretext" at the final stage of the burden-shifting analysis, he has nevertheless presented a jury question on his claim of disparate treatment based on race as a result of the Supreme Court's conclusion in *Desert Palace* that, to be entitled to a "mixed-motive" instruction, the plaintiff does not have to present "direct" evidence of discrimination. The defendant contends that, whatever the impact of *Desert Palace*, the plaintiff has failed to present a triable claim of disparate treatment based on race.

## I. INTRODUCTION

### A. Procedural Background

In this action, filed May 31, 2002, plaintiff James Dunbar, an African–American, asserts race discrimination claims against his former employer, defendant Pepsi–Cola General Bottlers of Iowa, Inc. (Pepsi), pursuant to both Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and the Iowa Civil Rights Act (ICRA), Iowa Code Ch. 216. Somewhat more specifically, in Count I of his Complaint, Dunbar alleges disparate treatment in violation of Title VII premised on allegations that he was terminated from his employment as a warehouse worker at Pepsi's Mason City facility and subjected to different terms and conditions of employment because of his race. In Count II, he alleges a racially hostile work environment in violation of Title VII and the ICRA.

This matter is now before the court pursuant to Pepsi's July 1, 2003, motion for summary judgment on Dunbar's disparate treatment and hostile environment claims. On August 4, 2003, Dunbar resisted the motion for summary judgment, but *only* as to the disparate treatment claim. In his resistance, Dunbar expressly states that he "is not contesting Defendant's Motion for Summary Judgment on Plaintiff's racial harassment claim." Plaintiff's Suggestions In Opposition To Defendant Pepsi–Cola General Bottlers Of Iowa, Inc.'s Motion For Summary Judgment (Plaintiff's Brief), 18. Therefore, Pepsi's motion for summary judgment will be granted as to Count II of Dunbar's Complaint, and the court's analysis will focus entirely on whether or not there are genuine issues of material fact that preclude summary judgment on Dunbar's claim of disparate treatment based on race in violation of Title VII. Pepsi filed its reply in further support of its motion for summary judgment on Dunbar's disparate treatment claim on August 12, 2003. Neither party requested oral arguments, so this matter is fully submitted on the parties' written filings.

### B. Factual Background

Whether or not a party is entitled to summary judgment ordinarily turns on whether or not there are genuine issues of material fact for trial. *See, e.g., Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996). Nevertheless, the court will not

attempt here a comprehensive review of the undisputed and disputed facts in the record. Rather, the court will present here only sufficient factual background to put in context the parties' arguments for and against summary judgment on Dunbar's disparate treatment claim. More attention will be given to specific factual disputes, where necessary, in the court's legal analysis, below.

The parties agree that Dunbar was hired in August 1998 as a full-time employee in Pepsi's warehouse in Mason City, Iowa. Dunbar was hired by Dave Van Syoc, the Warehouse Supervisor. Dunbar was one of four to six men working in the warehouse besides Van Syoc. However, Dunbar was the only African–American working there. Dunbar's job involved using a forklift to load pallets of Pepsi products onto delivery trucks. Each loader was ordinarily assigned one side of a truck, either "even" or "odd," to load, based on a loading sheet.

In the fall of 1998, based on complaints about loading errors from Pepsi delivery drivers, Van Syoc cautioned or warned the loaders to do a better job. However, on September 11, 1998, Van Syoc discovered numerous errors in the loading of a truck on which Dunbar and another loader, named Paul Lee, had been working. After Lee had completed loading his side of the truck, he had assisted Dunbar with loading Dunbar's side. Although Dunbar asserts that Lee tried to take responsibility for the loading errors, Van Syoc gave Dunbar a written disciplinary report for the loading errors, apparently because he believed that Dunbar had coerced Lee into admitting the loading mistakes and/or because Dunbar had failed to double-check the load before signing off on the loading sheet. Dunbar refused to sign the "write up," because he believed that Lee had made the loading errors, and he alleges that Van Syoc refused to listen to his side of the story or to allow him to file a written rebuttal with the disciplinary "write up." Pepsi contends that the "write up" was a "Group II–E violation" of Pepsi's General Rules of Conduct, which would warrant a $50 reduction in an employee's year-end bonus. The year-end bonus was part of an Employee Incentive Program, which calculated the bonus on the basis of "points," each worth $1 in year-end bonus, accumulated by individual employees based upon such job performance factors as attendance and lack of safety violations.

The next incident of significance to Dunbar's remaining claim of disparate treatment occurred in December of 1998. On or about December 21, 1998, Van Syoc distributed the year-end bonuses to the warehouse employees. Dunbar believed that he had accumulated 45 "points" toward his bonus, so that he expected a bonus of $45. Although other employees received bonuses, Dunbar did not. Instead, Van Syoc informed Dunbar that he had not received a bonus, because of the "write up" on September 11, 1998. Dunbar alleges that he became "distraught," and felt "dejected" and "violated" when he learned that he would not receive a bonus. However, he apparently did not have any further conversation with Van Syoc about the matter until December 24, 1998, even though he worked December 22nd and 23rd and most of the shift on December 24th. On December 24, 1998, after learning that other employees had received bonuses, Dunbar contends that he became distraught and dizzy, and asked Van Syoc if he could leave, because he did not feel well. Pepsi contends that Van Syoc denied Dunbar's request, apparently after consulting by telephone with his immediate superior, William Galligan, who was the Plant Manager at the time. Pepsi also contends that Galligan told Van Syoc to tell Dunbar that leaving before permission was granted would be insubordination.

However, Dunbar contends that Van Syoc did not tell him he could not go home, or that he would be fired if he did leave, although Dunbar asserts that Van Syoc did tell him that he would need a doctor's excuse if he did leave. Dunbar left work early on December 24, 1998.

Pepsi contends that, notwithstanding that he was supposedly too ill to continue working, Dunbar took his stepdaughter out to dinner that evening. However, Dunbar contends that he attempted to see a doctor after leaving work, but could not get an appointment until December 29, 1998. Dunbar called in sick each day through December 29th. Dunbar was eventually seen by a doctor, Dr. Claussen, on December 29, 1998. Dr. Claussen prescribed blood-pressure medication and provided Dunbar with excuses from work. When Dunbar attempted to return to work, Van Syoc informed him that he was terminated.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

As this court has explained on a number of occasions, applying the standards of Rule 56 of the Federal Rules of Civil Procedure providing for summary judgment, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Quick,* 90 F.3d at 1377 (same).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston v. NME Hosps., Inc.,* 133 F.3d 1104, 1107 (8th Cir.1998); *Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir. 1993). When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995). An issue of material fact is "genuine" if it has a real basis in the record. *Hartnagel,* 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co.,* 475 U.S. at 586–87, 106 S.Ct. 1348). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *i.e.,* are "material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct.

2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994). Finally, this court has repeatedly taken note of the rule in this circuit that, because summary judgment often turns on inferences from the record, summary judgment should seldom or rarely be granted in employment discrimination cases. *See, e.g., Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991)).

The court will apply these standards to Pepsi's motion for summary judgment on Dunbar's remaining claim of racial discrimination in the form of disparate treatment.

### B. Elements Of A Prima Facie Case Of Disparate Treatment

■ The parties agree that to establish a *prima facie* case of race discrimination, the plaintiff must establish that (1) he was a member of a protected group; (2) he was qualified for his position; and (3) he suffered an adverse employment action. *See, e.g., Jones v. Reliant Energy–ARKLA,* 336 F.3d 689, 691 (8th Cir.2003). Pepsi contends that there is also a *fourth* element: that similarly situated employees who are not members of the plaintiff's protected group were not subjected to that adverse employment action, citing *Clark v. Runyon,* 218 F.3d at 915, 918 (8th Cir.2000). Dunbar contends that the *third* element, properly stated, is that he suffered adverse employment action *under circumstances giving rise to an inference of discrimination,* citing *Bergstrom–Ek v. Best Oil Co.,*

153 F.3d 851 (8th Cir.1998). Dunbar contends that Pepsi's *fourth* element, different treatment of similarly situated persons, is only one way, not the exclusive way, to generate an inference of discrimination and that Pepsi's fourth element is only required when disparate treatment is the only evidence of "pretext," citing *Scott v. County of Ramsey,* 180 F.3d 913, 917 (8th Cir.1999).

■ The court agrees that Dunbar's *third* element encompasses the issue in Pepsi's *third* and *fourth* elements, which is whether or not there is an inference of discrimination in the adverse employment action. The court also agrees that proof that similarly situated persons were treated differently is not the only way to generate the necessary inference. *See Young v. Warner–Jenkinson Co.,* 152 F.3d 1018, 1021–22 (8th Cir.1998). However, the court nevertheless concludes that Dunbar has misstated the rule in *Scott* and misunderstood what he must prove in this case to establish his *prima facie* case.

In *Scott,* the court was actually discussing the elements of a *prima facie* case of *retaliation* in violation of Title VII, not *race discrimination. See Scott,* 180 F.3d at 917. The court stated that, to establish a *prima facie* case of retaliation, the plaintiff was required to show that he "engaged in a protected activity, that the defendant took adverse employment action against him, and that there is a connection between the two." *Id.* The court then explained that, if the plaintiff made this initial showing, the burden shifted to the defendant employer to advance a legitimate reason for the employment action taken against the plaintiff, and if the employer advanced such a legitimate reason, the plaintiff was then required to prove that the defendant intentionally discriminated against the plaintiff. *Id.* The court observed that the plaintiff could make this

ultimate showing "indirectly by establishing that the defendant's proffered reason is merely a pretext for retaliation." *Id.*

In *Scott,* the court noted that the plaintiff had tried to make the necessary showing of pretext by showing that his termination and the stated reasons for it were inconsistent with his performance evaluation; that there was a close temporal proximity between his participation in an investigation of discriminatory conduct and his termination; "and disparate treatment." *Id.* The court concluded that "[t]he only argument we need address here is the [defendant's] contention that the evidence of disparate treatment falls short as a matter of law because [the plaintiff] failed to establish that he and the other employees were similarly situated in all relevant respects." *Id.* The court then noted,

> This strong showing by the plaintiff is required when the only evidence of pretext *or discrimination* is disparate treatment. *See Harvey v. Anheuser–Busch, Inc.,* 38 F.3d 968, 972 (8th Cir. 1994). However, when as here, the evidence of disparate treatment is offered as one component of circumstantial proof of pretext, the "evidence does not need to reach the degree of certainty required of plaintiffs who present no proof of discrimination besides [disparate treatment]." *Bevan v. Honeywell, Inc.,* 118 F.3d 603, 611 (8th Cir.1997) (citing *MacDissi [v. Valmont Indus., Inc.],* 856 F.2d [1054,] 1058 [ (8th Cir. 1988) ] ).

*Id.* at 917–18 (emphasis added). Thus, the court in *Scott* considered what was required to show *disparate treatment* to prove *pretext* on a *retaliation* claim. *Id.* However, the court also noted that, when the only proof of *discrimination* that the plaintiff offers is *disparate treatment,* the plaintiff *is* required to prove that other similarly situated employees were treated differently. *Id.*

Here, the only "discrimination" claim that Dunbar now asserts *is* a claim of disparate treatment based on race: Dunbar has conceded that Pepsi is entitled to summary judgment on his hostile environment claim, leaving only his claim that he was terminated and subjected to different terms and conditions of employment because of his race. Therefore, this is the sort of case in which the court in *Scott* noted that the "strong showing" that the plaintiff was treated differently than similarly situated persons not in his protected class *is* required, *i.e.,* a case in which "the only evidence of . . . discrimination [Dunbar offers] is disparate treatment." *Id.* Indeed, in *Jones v. Reliant Energy–ARK-LA,* 336 F.3d 689 (8th Cir.2003), where the claim was a claim of disparate treatment based on race, the court formulated the elements of the plaintiff's *prima facie* case to be the following: "1) [the plaintiff] is within the protected class; 2) [the plaintiff] was qualified to perform [his or her] job, 3) [the plaintiff] suffered an adverse employment action, and 4) non-members of [the plaintiff's] class, *e.g.,* white employees, were treated differently." *Jones,* 336 F.3d at 691 (citing *Breeding v. Arthur J. Gallagher & Co.,* 164 F.3d 1151, 1156 (8th Cir. 1999)). These are the elements of Dunbar's *prima facie* case of disparate treatment, as well.

Although Pepsi does not contest the first element, that Dunbar is a member of a protected group, it does contest the sufficiency of the evidence to generate a genuine issue of material fact on each of the remaining elements of Dunbar's *prima facie* case. Therefore, the court turns to consideration of each of the challenged elements in turn.

### 1. Dunbar's "qualification"

As to the first challenged element of Dunbar's *prima facie* case, whether or

not he was "qualified," *see Jones*, 336 F.3d at 691, Pepsi contends that Dunbar was not "qualified," in that he did not meet the legitimate expectations of his employer, because he "continually" made loading errors, which constitute Group II–E violations of Pepsi's General Code of Conduct. As to Dunbar's discipline and termination in December 1998, Pepsi argues that Dunbar did not meet the legitimate expectations of his employer, because he engaged in insubordination when he left his job early on Christmas Eve after Van Syoc told him to stay. Dunbar, however, contends that he was "qualified," pointing to evidence that co-workers described him as a good, hard worker, his attendance and safety records were good, and the only blemish on his work record was the one loading "write up" in September by a Caucasian supervisor who knew that another employee had admitted the loading error. He also disputes Pepsi's contentions regarding his illness on December 24, 1998, and whether or not Van Syoc ever told him he could not leave.

■ The court agrees with Pepsi that the "qualification" element of Dunbar's *prima facie* case requires Dunbar to show that he was meeting the employer's legitimate expectations. *See, e.g., Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061, 1064 (8th Cir.1988). However, the court does not agree that Dunbar has failed to meet his burden to defeat summary judgment by designating "specific facts showing that there is a genuine issue for trial" on the issue of his "qualification." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Although Pepsi points out that Dunbar was disciplined *once* for loading errors, Dunbar has pointed to evidence that he otherwise had a "clean" employment record up until the time that he was allegedly terminated because of his race. Had he been "unqualified" owing to "continual" loading errors, as Pepsi contends, one would reasonably expect that

there would be a record of "continual" discipline or negative job evaluations, which appears to be absent here. The fact that Dunbar was not fired on the only occasion that the record shows that he was disciplined for a loading error also suggests that one "write up" for such an error did not mean that he was failing to meet his employer's *reasonable* or *legitimate* expectations. *Brooks*, 852 F.2d at 1064 (defining "qualified" in terms of an employer's "legitimate" expectations). Moreover, the issue of whether Dunbar was "insubordinate" is disputed, in light of Dunbar's evidence that Van Syoc never told him that he could not leave on December 24, 1998, but instead told him that he would need a doctor's excuse if he did leave. Thus, "a reasonable jury could return a verdict for the nonmoving party" on the question of Dunbar's "qualification." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

### 2. Adverse employment action

■ Pepsi next contends that Dunbar cannot prove an "adverse employment action," the third element of his *prima facie* case, *see Jones*, 336 F.3d at 691, out of the disciplinary action in September of 1998 and the failure to receive a bonus in December of 1998—even though Pepsi concedes that "termination" is an adverse employment action—because Dunbar's duties, working conditions, and salary remained the same up until his termination. Pepsi specifically contends that failure to get a holiday bonus does not constitute an adverse employment action, citing *Miller v. American Family Mutual Insurance Company*, 203 F.3d 997, 1006 (7th Cir. 2000), and *Rabinovitz v. Pena*, 89 F.3d 482, 488–89 (7th Cir.1996). Dunbar, however, argues that not only is termination an adverse employment action, but disqualifying an employee from a *benefit* that he might otherwise be entitled to receive, which was the case with denial of his year-

end bonus, also constitutes an adverse employment action, citing *Jacob–Mua v. Veneman*, 289 F.3d 517, 522 (8th Cir.2002). He points out that the Employee Incentive Program, pursuant to which he should have received a bonus, was not just a subjective, gratuitous bonus program, but an objective, structured, and established program under which he *earned* "points" toward clearly identified incentives.

In *Miller v. American Family Mutual Insurance Company*, 203 F.3d at 997 (7th Cir.2000), upon which Pepsi relies, the court reiterated its holding in *Rabinovitz v. Pena*, 89 F.3d 482 (7th Cir.1996), "that the 'loss of a bonus is not an adverse employment action in a case . . . where the employee is not automatically entitled to the bonus.'" *Miller*, 203 F.3d at 1006 (quoting *Rabinovitz*, 89 F.3d at 488–89). Thus, far from holding that deprivation of a bonus can *never* be an adverse employment action, as Pepsi seems to argue, in *Miller* and *Rabinovitz*, the Seventh Circuit Court of Appeals applied a much more limited rule. The question here, under *Miller* and *Rabinovitz*, is whether or not Dunbar was "automatically entitled to the bonus" that he contends that he was denied. *See id.; Rabinovitz*, 89 F.3d at 488–89.

On that question, the court finds that Dunbar has generated a genuine issue of material fact. He has met his burden to defeat summary judgment, *see* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548, by pointing to evidence that the "bonus" was not merely a gratuitous or subjective "gift" from his employer, but was, instead, part of an Employee Incentive Program involving a structured means of *earning* "points" toward a specified "bonus," and as such, the "bonus" is really "automatic." *See Miller*, 203 F.3d at 1006 (considering whether or not the employee is "automatically entitled to the bonus"). This evidence also suggests that the "bo-

nus" is really more of a job "benefit" than a gratuitous or subjective award from an open-handed employer. As Dunbar points out, "'[a]n adverse employment action is exhibited by a material employment disadvantage, such as change in salary, *benefits*, or responsibilities.'" *Jacob–Mua v. Veneman*, 289 F.3d 517, 522 (8th Cir.2002) (quoting *LaCroix v. Sears, Roebuck & Co.*, 240 F.3d 688, 691 (8th Cir.2001) (citations omitted), and *Bradley v. Widnall*, 232 F.3d 626, 632 (8th Cir.2000)) (emphasis added). The court finds that a jury question is presented on whether or not loss of the "bonus" earned pursuant to the Employee Incentive Program constituted an "adverse employment action." *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505 (the question is whether "a reasonable jury could return a verdict for the nonmoving party"). Pepsi is not entitled to summary judgment on Dunbar's claim on the ground that he cannot show any "adverse employment action."

### 3. Treatment of similarly situated persons

■ As this court explained above, because disparate treatment is the *only* kind of race discrimination that Dunbar now asserts, to complete his *prima facie* case, he must show that "non-members of [his] class, *e.g.*, white employees, were treated differently." *Jones*, 336 F.3d at 691; *Scott*, 180 F.3d at 917–18 (such a "strong showing" is required when disparate treatment is the only form of discrimination asserted by the plaintiff). Pepsi contends that, although Van Syoc supervised all of the loaders, there is no evidence that Van Syoc treated Dunbar differently than he treated other warehouse employees who were not African–American. Dunbar disagrees, pointing to evidence that Lee was not disciplined in the same way that he was even though Lee admitted the loading error for which Dunbar was disciplined,

and other non-African-American employees received bonuses, even though they had also made occasional loading errors.

 As this court has explained, when the "strong showing" is required, either for purposes of a *prima facie* case or a showing of "pretext," the plaintiff must show that he was " 'similarly situated in all relevant respects' to a non-member of the protected class who was more favorably treated." *See Joens v. John Morrell & Co.*, 243 F.Supp.2d 920, 948 (N.D.Iowa 2003). More specifically,

> In order to determine whether a plaintiff has shown that the employees involved were "similarly situated," the court considers, for example, whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. *Cronquist [v. City of Minneapolis]*, 237 F.3d [920,] 927 [ (8th Cir.2001) ]; *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1309 (8th Cir. 1994); *Boner v. Board of Comm'rs of Little Rock Mun. Water Works*, 674 F.2d 693, 697 (8th Cir.1982). It is not up to the employer to prove dissimilarity. *Lanear [v. Safeway Grocery]*, 843 F.2d [298,] 301 [ (8th Cir.1988) ] (citing *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1254 (8th Cir.1981). "The test for whether employees are similarly situated to warrant a comparison to the plaintiff is 'rigorous.' " *Cronquist*, 237 F.3d at 927 (quoting *Harvey [v. Anheuser–Busch, Inc.]*, 38 F.3d [968,] 972 [ (8th Cir. 1994) ] ).

*Weiland v. El Kram, Inc.*, 233 F.Supp.2d 1142, 1156–57 (N.D.Iowa 2002).

The court finds that Dunbar has generated genuine issues of material fact that he can pass the "rigorous" test for proving that similarly situated non-members of his protected group were treated differently.

Dunbar has met his burden, *see* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548, by pointing to evidence that Paul Lee, who was involved in precisely the same loading errors for which he was disciplined, was not disciplined by the same supervisor, Van Syoc, in the same way, nor were other non-African-American employees in the warehouse under Van Syoc's supervision similarly disciplined for the supposed spate of loading errors. Dunbar has also pointed to evidence that no other warehouse employee lost his year-end "bonus" because of disciplinary action for loading errors. Finally, Dunbar has pointed to evidence that no other warehouse employee was terminated for missing work after presenting a doctor's excuse for his absences. This evidence is sufficient for a reasonable jury to find that similarly situated non-African-American employees of the warehouse were treated differently than Dunbar. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505 (the question is whether "a reasonable jury could return a verdict for the nonmoving party"). Pepsi is not entitled to summary judgment on this last element of Dunbar's *prima facie* case of disparate treatment.

### C. Further Showings

Pepsi contends that, even if Dunbar can establish a *prima facie* case of disparate treatment, he cannot ultimately prove that race discrimination was the reason for his discipline, failure to receive a bonus, or termination. Pepsi argues that it has advanced legitimate, non-discriminatory reasons for its employment actions toward Dunbar, but that he has not shown that these reasons are a pretext for race discrimination. Dunbar argues that he can show that Pepsi's proffered reasons are a pretext for discrimination, and indeed, that he has "direct evidence" of discrimination. He also argues that, even if he cannot point to "direct evidence," and his circum-

stantial evidence fails to demonstrate "pretext," he would still be entitled to relief under *Desert Palace v. Costa*, 539 U.S. ——, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), and 42 U.S.C. § 2000e–2(m). He argues that *Desert Palace* modifies the final stage of the *McDonnell Douglas* burden-shifting paradigm for circumstantial evidence cases, based on *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), because the Supreme Court held in *Desert Palace* that direct evidence is not required to entitle a plaintiff to a "mixed-motive" instruction and the relief provided in 42 U.S.C. § 2000e–5(g). Therefore, he contends that if the plaintiff fails to prove that the employer's reasons for its conduct are pretextual, but nevertheless proves that discrimination was "a motivating factor" for the employer's conduct, his claim survives, and the burden then shifts to the employer to prove that it would have taken the same actions even without consideration of protected characteristics of the plaintiff. For this broad impact of the *Desert Palace* decision, Dunbar relies on *Dare v. Wal-Mart Stores, Inc.*, 267 F.Supp.2d 987 (D.Minn.2003).

### 1. *Desert Palace v. Costa and its impact*

#### a. *The Supreme Court's decision*

■ This court's analysis of what further showings Dunbar may be required to make to defeat Pepsi's motion for summary judgment begins with consideration of the Supreme Court's decision in *Desert Palace v. Costa*, 539 U.S. ——, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). In *Desert Palace*, the Court noted that "[t]his case provides us with the first opportunity to consider the effects of the 1991 Act [amending Title VII] on jury instructions in mixed-motive cases." *Desert Palace*, 539 U.S. at ——, 123 S.Ct. at 2153. The amendment in question stated that, "[e]x-

cept as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m); *see also Desert Palace*, 539 U.S. at ——, 123 S.Ct. at 2151 (quoting the statute). The Court explained the issue presented by the amendment, as follows:

Since the passage of the 1991 Act, the Courts of Appeals have divided over whether a plaintiff must prove by direct evidence that an impermissible consideration was a "motivating factor" in an adverse employment action. See 42 U.S.C. § 2000e–2(m). Relying primarily on Justice O'Connor's concurrence in *Price Waterhouse [v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) ], a number of courts have held that direct evidence is required to establish liability under § 2000e–2(m). *See, e.g., Mohr v. Dustrol, Inc.*, 306 F.3d 636, 640–641 (8th Cir.2002); *Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 580 (1st Cir.1999); *Trotter v. Board of Trustees of Univ. of Ala.*, 91 F.3d 1449, 1453–1454 (11th Cir.1996); *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995). In the decision below, however, the Ninth Circuit concluded otherwise. *See infra*, at 2153.

*Desert Palace*, —— U.S. at ——, 123 S.Ct. at 2151–52. In *Desert Palace*, a unanimous Supreme Court held that "direct evidence" is *not* required in order for a plaintiff to obtain a mixed-motive instruction under Title VII. *Id.* at ——, 123 S.Ct. at 2150, 2155.

The Court found four bases for its conclusion that § 2000e–2(m) does not require direct evidence of discrimination: (1) the unambiguous language of the statute—that

a plaintiff need only "demonstrat[e]" that an employer used a forbidden consideration with respect to "any employment practice"—which the Court concluded "[o]n its face ... does not mention, much less require, that a plaintiff make a heightened showing through direct evidence"; (2) Congress's explicit definition of "demonstrates" in § 2000e(m) as "to 'mee[t] the burdens of production and persuasion,'" which did not include any "direct evidence" requirement; (3) the "conventional rule," applicable in Title VII cases, that a plaintiff must prove his or her case "by a preponderance of the evidence" using "direct or circumstantial evidence"; and (4) the use of the term "demonstrates" in other provisions of Title VII, which "tends to show further that § 2000e–2(m) does not incorporate a direct evidence requirement," because "[a]bsent some congressional indication to the contrary, we decline to give the same term in the same Act a different meaning depending on whether the rights of the plaintiff or the defendant are at issue." *Id.* at ——, 123 S.Ct. at 2153–55. The Court summarized its holding as follows:

> In order to obtain an instruction under § 2000e–2(m), a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that "race, color, religion, sex, or national origin was a motivating factor for any employment practice." Because direct evidence of discrimination is not required in mixed-motive cases, the Court of Appeals correctly concluded that the District Court did not abuse its discretion in giving a mixed-motive instruction to the jury.

*Id.* at 2155. Although this holding only purported to address when a plaintiff is entitled to a mixed-motive instruction, some lower courts have concluded that the holding has a much broader impact. Specifically, some courts have read *Desert Palace* to apply to "single-motive" cases as well as "mixed-motive" cases, some have read it to spell the demise of the *McDonnell Douglas* burden-shifting paradigm, and some have read it to do both.

### b. *Responses of the lower courts*

**i.** ***Dare v. Wal–Mart Stores, Inc.*** One of the decisions to read *Desert Palace* to have both implications is *Dare v. Wal–Mart Stores, Inc.*, 267 F.Supp.2d 987 (D.Minn.2003), on which Dunbar relies. In *Dare*, the court contemplated the applicability of the Civil Rights Act of 1991 to what was ostensibly a "single-motive" claim in light of *Desert Palace*. *Dare*, 267 F.Supp.2d at 990. The court concluded that "the holding in *Desert Palace* applies to [such] claims," because " '[t]he words of the statute are unambiguous' and nothing in the plain meaning of § 2000e–2(m) and § 2000e–5(g)(2)(B) expressly restricts the Civil Rights Act of 1991 to mixed-motive cases," even if the final phrase of § 2000e–2(m) may imply multiple motives. *Id.* at 990–91. "Rather," the court concluded in *Dare*, "the plain language of the statute allows a plaintiff to prevail if he or she can prove by a preponderance of the evidence that a single, illegitimate motive was a motivating factor in an employment decision, without having to allege that other factors also motivated the decision." *Id.* at 991.

The court in *Dare* reasoned that the *McDonnell Douglas* burden-shifting analysis created a "false dichotomy" between cases in which the defendant's proffered reason was true and valid, resulting in victory for the defendant, and cases in which it is false and invalid, resulting in victory for the plaintiff. *Id.* The court observed,

> In practice, few employment decisions are made solely on [the] basis of one rationale to the exclusion of all others. Instead, most employment decisions are the result of the interaction of various

factors, legitimate and at times illegitimate, objective and subjective, rational and irrational. The Court does not see the efficacy in perpetuating this legal fiction implicitly exposed by the Supreme Court's ruling in *Desert Palace.* When possible, this Court seeks to avoid those machinations of jurisprudence that do not comport with common sense and basic understandings of human interaction.

*Dare,* 267 F.Supp.2d at 991–92. Moreover, the court in *Dare* reasoned that a plaintiff's unsuccessful challenge to the defendant's non-discriminatory rationale should not automatically allow the defendant to escape liability, but should "merely subject the defendant to the mixed-motive analysis dictated by the Civil Rights Act of 1991." *Id.* at 992. This was so, because "a plaintiff can fail to prove that the defendant's proffered reason is false without automatically or necessarily failing to prove that another motivating factor was illegitimate," with the result that "when a defendant prevails under the *McDonnell Douglas* scheme, the court is left with a classic mixed-motive scenario, in which both alleged motives could have factored into the defendant's ultimate employment decision." *Id.* Such a result, the court concluded, was "clearly impermissible under the Civil Rights Act of 1991, which holds an employer liable for considering a discriminatory motive, even when other, legitimate and sufficient motives were also considered." *Id.* Next, the court reasoned that the "same decision test" required by the Civil Rights Act of 1991 "functions just as effectively when applied to single-motive claims as it does when applied to mixed-motive claims," and "[i]n fact, the same decision test functions better than the alternative *McDonnell Douglas* pretext analysis," because it "compar[es] all of the alleged factors together," imposing at least some liability for consideration of an illegitimate factor. *Id.*

***ii. Other decisions.*** In *Griffith v. City of Des Moines,* 2003 WL 21976027 (S.D.Iowa July 3, 2003), another district court, also in this circuit, adopted the view of the impact of *Desert Palace* on the *McDonnell Douglas* burden-shifting paradigm espoused in *Dare.* The court in *Griffith* explained why it was persuaded by *Dare,* as follows:

> In the Eighth Circuit, the *McDonnell Douglas* framework applied where plaintiff's claim was primarily supported by circumstantial evidence; the *Price Waterhouse* framework applied where plaintiff presented direct evidence of discrimination. *See Mohr v. Dustrol, Inc.,* 306 F.3d 636, 639–40 (8th Cir.2002). This dichotomy was recently called into question by the Supreme Court's decision in *Desert Palace v. Costa,* —— U.S. ——, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), which interpreted the 1991 amendments to Title VII. *See also Costa v. Desert Palace, Inc.,* 299 F.3d 838, 855 *affirmed by Desert Palace v. Costa,* —— U.S. ——, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). ("[N]othing compels the parties to invoke the *McDonnell Douglas* presumption. Evidence can be in the form of the *McDonnell Douglas* prima facie case, or other sufficient evidence-direct or circumstantial-of discriminatory intent."). In *Dare v. Wal–Mart,* at 990–91 (D.Minn.2003), the federal district court held that in light of the 1991 amendments to Title VII and the Supreme Court's decision in *Desert Palace,* courts are no longer obliged to apply the *McDonnell Douglas* framework when considering a motion for summary judgment on a "single motive" Title VII claim. This Court agrees with the well-reasoned opinion in *Dare* and finds that a plaintiff may bring his Title VII claim "according to the burdens articulated in [the] Civil Rights Act of 1991," without being confined to the strictures of the

*McDonnell Douglas* burden-shifting framework. *Dare,* at 991. *See also Wells v. Colorado Dept. of Transp.,* 325 F.3d 1205, 1221 (10th Cir.2003) (Hartz, J. dissenting) ("The *McDonnell Douglas* framework only creates confusion and distracts courts from the ultimate question of discrimination *vel non. McDonnell Douglas* has served its purpose and should be abandoned.") (internal quotation omitted). Thus, to survive summary judgment, plaintiff must simply demonstrate that a genuine issue of material fact exists as to whether or not race was a motivating factor in an adverse employment action defendant suffered. *See Dare v. Wal–Mart Stores, Inc.,* at 991 (D.Minn.2003) (permitting a plaintiff to proceed under the allocations of burdens articulated in Civil Rights Act of 1991 with a "single-motive" claim); *Costa,* 299 F.3d at 848 ("[I]f the employee succeeds in proving only that a protected characteristic was one of several factors motivating the employment action, an employer cannot avoid liability altogether, but instead may assert an affirmative defense to bar certain types of relief by showing the absence of 'but for' causation.").

*Griffith,* 2003 WL 21976027 at *12.

This view of the impact of *Desert Palace* is not universal among the lower courts, however. For example, contrary to the conclusion in *Dare* that *Desert Palace* and § 2000e–2(m) apply to "single-motive" cases as well as "mixed-motive" cases, another district court recently concluded that, "[b]ecause no possibility of a mixed motive for the defendant's actions with respect to this incident is raised by the evidence in the summary judgment record, the recent decision of the Supreme Court in *Desert Palace* ... does not apply." *Davis v. Emery Worldwide Corp.,* 267 F.Supp.2d 109, 120 n. 2 (D.Me.2003). The Fourth Circuit Court of Appeals took a less categorical view, noting that "[i]n

*[Desert Palace]* the Court refused to decide 'when, if ever, [42 U.S.C. § 2000e-w(m) ] applies outside of the mixed-motive context,' " and, therefore, the Fourth Circuit Court of Appeals "decline[d] to do so as well." *Rowland v. American Gen. Fin., Inc.,* 340 F.3d 187, 192 n. 4 (4th Cir.2003) (quoting *Desert Palace,* 539 U.S. at —— n. 1, 123 S.Ct. at 2151 n. 1). However, that court found that the plaintiff had presented sufficient evidence suggesting that her sex was at least one of the motivating factors behind the defendant's decision not to promote her, such that a reasonable jury, properly instructed, could have decided the matter in her favor; therefore, the district court had abused its discretion in refusing a mixed-motive instruction. *Id.* at 193 (also noting that whether or not the plaintiff would be entitled to damages would depend, in part, on whether the defendant could successfully avail itself of the "same decision" defense under 42 U.S.C. § 2000e–5(g)(2)(B)). Thus, there is some uncertainty among the lower courts as to whether or not *Desert Palace* and § 2000e–2(m) apply to "single-motive" cases as well as "mixed-motive" cases, and whether or not *Desert Palace* spells the demise of the *McDonnell Douglas* burden-shifting paradigm.

Although *Desert Palace* expressly overruled the Eighth Circuit rule that direct evidence is required to obtain a mixed-motive instruction, *see Desert Palace,* —— U.S. at ——, 123 S.Ct. at 2152 (citing cases adhering to such a rule as including *Mohr v. Dustrol, Inc.,* 306 F.3d 636, 640–41 (8th Cir.2002)), the Eighth Circuit Court of Appeals has not expressed a view on whether or not *Desert Palace* requires the amendment or demise of the *McDonnell Douglas* burden-shifting paradigm for single-motive or circumstantial evidence cases. Rather, in *Allen v. City of Pocahontas, Ark.,* 340 F.3d 551 (8th Cir.2003), the court specifically declined to reach the issue of "wheth-

er the Supreme Court's refocus [in *Desert Palace* ] on the statutory language of the Civil Rights Act of 1991 alters the burden-shifting analysis of *McDonnell Douglas*," finding that the result in the case before it remained the same, either way. *Allen*, 340 F.3d at 557 n. 4. This was so, the court concluded, because "Petitioner has provided no evidence, direct or circumstantial, from which a reasonable jury could logically infer that age or gender was a motivating factor in her termination." *Id.* This pithy statement provides a reasonable resolution of the question of what the plaintiff must do to satisfy the 1991 amendments and *Desert Palace:* The plaintiff must provide evidence, direct or circumstantial, from which a reasonable jury could logically infer that the plaintiff's protected characteristic was a motivating factor for adverse employment action. Similarly, in a recent decision, *Knutson v. Ag Processing, Inc.*, 273 F.Supp.2d 961 (N.D.Iowa 2003), this court read *Desert Palace* to confirm the holdings of the Eighth Circuit Court of Appeals that a protected characteristic "need not be the sole motivating factor" in the employer's decision for the plaintiff to establish liability under 42 U.S.C. § 2000e–2(m). *Knutson*, at 994–95.

#### c. Analysis

██ This court is hopeful that the full import of the Supreme Court's decision in *Desert Palace* and § 2000e–2(m) will become clearer as more courts grapple with the issue or the Supreme Court has the opportunity to revisit related issues. For the moment, however, this court must make its best attempt to determine what the implications of *Desert Palace* and § 2000e–2(m) are for this case. To that end, this court offers the following observations.

As the Supreme Court noted in *Desert Palace*, "Since 1964, Title VII has made it an 'unlawful employment practice for an employer ... to discriminate against any individual ..., *because of* such individual's race, color, religion, sex, or national origin.'" *Desert Palace*, 539 U.S. at ——, 123 S.Ct. at 2150 (quoting 42 U.S.C. § 2000e–2(a)(1), with emphasis added by the Court). Moreover, in 1991, Congress amended Title VII to make clear that, "Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was *a motivating factor* for any employment practice, *even though other factors also motivated the practice.*" 42 U.S.C. § 2000e–2(m) (emphasis added); *see also Desert Palace*, 539 U.S. at ——, 123 S.Ct. at 2151 (quoting the statute). Thus, this court believes that Congress has made plain that an employment practice "because of" a protected characteristic means that the protected characteristic was "a motivating factor" for that employment practice, *not* that it was the *sole* motivating factor.

Now, the Supreme Court has made clear in *Desert Palace* that demonstration of "a motivating factor" does *not* require "direct evidence"; rather, circumstantial evidence will suffice. *Desert Palace*, 539 U.S. at ——, 123 S.Ct. at 2153–55. Specifically, the Supreme Court held, "In order to obtain an instruction under § 2000e–2(m), a plaintiff need only present sufficient evidence for *a reasonable jury to conclude,* by a preponderance of the evidence that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" *Id.* at 2155 (quoting 42 U.S.C. § 2000e–2(m)) (emphasis added). This "reasonable jury" standard is precisely the same as the standard for defeating a motion for summary judgment—*i.e.*, whether the plaintiff has presented evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, it follows from *Desert Pal-*

ace and § 2000e–2(m) that the question on summary judgment is *not* whether the case is a "single-motive" case or "mixed-motive" case, or whether the case involves "direct" or "circumstantial" evidence, but whether the plaintiff has presented "evidence, direct or circumstantial, from which a reasonable jury could logically infer that [a protected characteristic] was a motivating factor in [the defendant's adverse employment action against the plaintiff]." *Allen,* 340 F.3d at 557 n. 4.[1]

This court agrees that *Desert Palace* and § 2000e–2(m) spell the demise of the "false dichotomy" between the *McDonnell Douglas* framework, which applied where a plaintiff's claim was primarily supported by circumstantial evidence, and the *Price Waterhouse* framework, which applied where a plaintiff presented direct evidence of discrimination. *See Griffith,* 2003 WL 21976027 at *12 (explaining that this "dichotomy" applied under Eighth Circuit law, citing *Mohr* 306 F.3d at 639–40); *see also Desert Palace,* 539 U.S. at ——, 123 S.Ct. at 2152, 2155 (rejecting the "direct evidence" rule espoused in, for example, *Mohr* ). This court also believes that *Desert Palace* and § 2000e–2(m) may spell the demise of the *Price Waterhouse* framework, instead conflating the analysis of *every* discrimination case into the question of whether the plaintiff has presented sufficient evidence, direct or circumstantial, for a reasonable jury to conclude, by a preponderance of the evidence, that "race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m); *see also Desert Palace,* 539

U.S. at ——, 123 S.Ct. at 2155; *Allen,* 340 F.3d at 557 n. 4. However, this court does not believe that *Desert Palace* and § 2000e–2(m) necessarily spell the demise of the entire *McDonnell Douglas* burden-shifting paradigm.

In this court's view, the flaw, if any, was not in the *McDonnell Douglas* burden-shifting paradigm, but in the now discredited assumption of the lower courts that, in the absence of "direct evidence" of discrimination, there could be no "mixed-motive" case. From that flawed assumption flowed the characterization of the final stage of the *McDonnell Douglas* burden-shifting paradigm, when only circumstantial evidence was available, in terms of only two alternatives: either the defendant's proffered explanation for its conduct was true, resulting in victory for the defendant, or the defendant's proffered explanation was a false pretext for discrimination, resulting in victory for the plaintiff. However, even before *Desert Palace,* in *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court made clear that, after the defendant offers a legitimate reason for its conduct, "the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [i]s discrimination *vel non.*" *Reeves,* 530 U.S. at 142–43, 120 S.Ct. 2097 (internal citations and quotation marks omitted); *see also id.* at 143, 120 S.Ct. 2097 (explaining that, "[a]lthough intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all

---

**1.** Having said so, this court admits that it is troubled by the Supreme Court's disclaimer in footnote 1 of the *Desert Palace* decision to the effect that the case before the Court "does not require us to decide when, if ever, § 107 [which added 42 U.S.C. §§ 2000e–2(m) and 2000e–5(g) ] applies outside of the mixed-mo-

tive context." *Desert Palace,* 539 U.S. at ——, 123 S.Ct. at 2151 n. 1. If *Desert Palace* means what this court otherwise reads it to mean, it is not clear what case would *not* be governed by § 2000e–2(m), and the related "same decision" affirmative defense in § 2000e–5(g)(2)(B).

times with the plaintiff.'") (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). In light of *Desert Palace* and § 2000e–2(m), once the *McDonnell Douglas* framework "disappears," because the defendant proffers a legitimate reason for its conduct, there are now more than two possibilities.

Specifically, if the defendant's proffered reason is *true,* there are three possible scenarios, which might be described as the "mixed motive" scenarios:

(1) The defendant's proffered reason is **true,** *and* it is the only reason (or, at least, the only reason supported by the record). No "mixed motive" is shown, and *the defendant wins.*

(2) The defendant's reason is **true,** there are *other* reasons supported by the record, *but* the plaintiff nevertheless fails to prove by the preponderance of the evidence (or to generate a genuine issue of material fact) that another "motivating factor" for the defendant's conduct was the employee's protected characteristic. No adequate "mixed motive" showing has been made, and *the defendant wins.*

(3) The defendant's reason is **true,** there are *other* reasons supported by the record, *and* the plaintiff proves by the preponderance of the evidence (or generates a genuine issue of material fact) that another "motivating factor" for the defendant's conduct was the employee's protected characteristic. An adequate "mixed motive" showing has been made, and *the plaintiff wins* (or at least defeats the defendant's motion for summary judgment).

Similarly, if the defendant's proffered reason is *false,* the plaintiff must still make a showing that the plaintiff's protected characteristic is the "real reason," *i.e.,* a showing of "pretext," with the following possible scenarios:

(1) The defendant's proffered reason is **false,** *but* no other reason is supported by the record (which implies that the "real reason" was the employer's right to fire an at-will employee for no reason). "Pretext" has not been shown, and *the defendant wins.*

(2) The defendant's proffered reason is **false,** there are *other* reasons supported by the record, *but* the plaintiff nevertheless fails to prove by the preponderance of the evidence (or to generate a genuine issue of material fact) that his or her protected characteristic was the real reason. "Pretext" has not been shown, and *the defendant wins.*

(3) The defendant's proffered reason is **false,** there are *other* reasons supported by the record, *and* the plaintiff proves by the preponderance of the evidence (or generates a genuine issue of material fact) that his or her protected characteristic was the real reason. An adequate showing of "pretext" has been made, and *the plaintiff wins* (or at least defeats the defendant's motion for summary judgment).

Only two of these possible scenarios result in victory for the plaintiff, or at least, allow a plaintiff to defeat a defendant's motion for summary judgment, because in only those two scenarios has the plaintiff made an adequate showing on his or her ultimate burden to prove intentional discrimination.

■ Thus, the *McDonnell Douglas* burden-shifting paradigm must only be *modified* in light of *Desert Palace,* § 2000e–2(m), and *only in its final stage,* so that it is framed in terms of whether the plaintiff can meet his or her "ultimate burden" to prove intentional discrimination, rather than in terms of whether the plaintiff can prove "pretext." Under such a modified framework, to prevail after the defendant produces a legitimate, nondiscriminatory reason for its conduct, the

plaintiff must prove by the preponderance of the evidence either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative), *see Reeves,* 530 U.S. at 143, 120 S.Ct. 2097; or (2) that the defendant's reason, while true, is only *one* of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive alternative). 42 U.S.C. § 2000e–2(m). The latter showing may be made with either "direct" or "circumstantial" evidence. *Desert Palace,* 539 U.S. at ——, 123 S.Ct. at 2155. If the plaintiff prevails under the *second* alternative, then if the defendant is to limit the remedies available to the plaintiff to injunctive relief, attorney's fees, and costs—*i.e.,* to escape liability for damages—the burden shifts back to the defendant to prove the affirmative defense stated in § 2000e–5(g)(2)(B), which is that the defendant "would have taken the same action in the absence of the impermissible motivating factor." 42 U.S.C. § 2000e–5(g)(2)(B).[2]

### 2. Application of the modified paradigm

#### a. Pepsi's legitimate, nondiscriminatory reasons

 The court readily concludes that Pepsi has met its second-stage burden

to "'produc[e] evidence that the plaintiff was [disciplined or discharged] for a legitimate, nondiscriminatory reason.'" *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097 (quoting *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089). Not only is the court not allowed to make credibility or "truth" determinations on a motion for summary judgment, *see Quick,* 90 F.3d at 1376–77, but the burden on the defendant at the second stage of the *McDonnell Douglas* burden-shifting paradigm "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097 (quoting *St. Mary's Honor Ctr.,* 509 U.S. at 509, 113 S.Ct. 2742). Here, Pepsi has produced evidence that it disciplined Dunbar for loading errors, which properly deprived him of a year-end "bonus," and that it terminated him for "insubordination" when he left work without permission on December 24, 1998. Thus, the question is whether Dunbar can satisfy—or at least generate genuine issues of material fact on—the modified third stage of the *McDonnell Douglas* analysis.

#### b. Dunbar's showing of "intentional discrimination"

In shorthand terms, the burden placed upon Dunbar at the modified third stage of

**2.** The court repeats its observation that, if *Desert Palace* means what this court reads it to mean, it is not clear what case that gets past summary judgment would *not* be governed by § 2000e–2(m), and the related "same decision" affirmative defense in § 2000e–5(g)(2)(B). More specifically, it is unclear to the court when, if ever, a case in which the plaintiff had generated genuine issues of material fact necessary to defeat summary judgment, notwithstanding the defendant's production of evidence of a legitimate, nondiscriminatory reason for its action, would *not* involve a jury question on whether the case involved both legitimate and illegitimate reasons for the employer's decision. Whether the plaintiff's evidence was that the

employer's proffered reason was false and pretextual, or that the employer's reason, while true, was not the only reason, and another "motivating factor" was a protected characteristic of the plaintiff, the jury would be presented with evidence supporting *both* the employer's proffered legitimate reason, and the plaintiff's asserted illegitimate reason. The court has trouble envisioning a case in which "no possibility of a mixed motive for the defendant's actions with respect to this incident is raised by the evidence in the summary judgment record," *see Davis,* 267 F.Supp.2d at 120 n. 2, once "direct evidence" is no longer required to establish a "mixed motive." *See Desert Palace,* 539 U.S. at ——, 123 S.Ct. at 2155.

the burden-shifting analysis is whether he has presented "evidence, direct or circumstantial, from which a reasonable jury could logically infer that [a protected characteristic] was a motivating factor in [the defendant's adverse employment action against the plaintiff]." *Allen,* 340 F.3d at 557 n. 4. As explained above, that inquiry involves two alternatives, as Dunbar must prove or generate genuine issues of material fact, based on direct or circumstantial evidence, either that (1) Pepsi's proffered reasons are not true, but are instead a pretext for race discrimination (pretext alternative), *see Reeves,* 530 U.S. at 143, 120 S.Ct. 2097; or (2) Pepsi's reasons, while true, are not the *only* reasons for its conduct, and that another "motivating factor" is his race (mixed-motive alternative). 42 U.S.C. § 2000e–2(m).

***i. Pretext alternative.*** As the Supreme Court recently explained in *Reeves,* a showing that the employer's proffered reason is not "the real reason" is not enough. *Reeves,* 530 U.S. at 153, 120 S.Ct. 2097. Rather, what the plaintiff's evidence must show, to avoid summary judgment or judgment as a matter of law, is " '1, that the stated reasons were not the real reasons for [the plaintiff's] discharge; and 2, that age [or race, or sex, or other prohibited] discrimination was the real reason for [the plaintiff's] discharge." *Id.* (quoting the district court's jury instructions as properly stating the law). The Supreme Court clarified in *Reeves* that, to meet this burden, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148, 120 S.Ct. 2097. Thus, a plaintiff must show, or at least generate a genuine issue of material fact, that the defendant's justification for its conduct is "unworthy of credence." *Smith v. Allen Health Sys., Inc.,* 302 F.3d 827, 833–34 (8th Cir.2002) (citing *Reeves,* 530

U.S. at 143, 120 S.Ct. 2097). While a *prima facie* case may be strong enough, standing alone, to make this showing, that is not always the case, and unlike the plaintiff's *prima facie* case, the evidence purportedly demonstrating pretext is " 'viewed in light of the employer's justification.' " *Id.* at 835 (quoting *Sprenger v. Federal Home Loan Bank,* 253 F.3d 1106, 1111 (8th Cir.2001)). As also explained above, evidence that similarly situated persons not sharing the plaintiff's protected characteristic were treated differently from the plaintiff is evidence of pretext. *See Scott,* 180 F.3d at 917.

When considering Dunbar's evidence that similarly situated persons were treated differently, which the court first examined in support of his *prima facie* case, for purposes of the present third-stage analysis, which here requires the court to consider the evidence "in light of the employer's justification," *see Smith,* 302 F.3d at 835 (internal quotation marks omitted), the court concludes that Dunbar's evidence is sufficient to generate the necessary genuine issues of material fact to defeat Pepsi's motion for summary judgment. Not only does such evidence suggest that Pepsi's proffered reasons are false, it suggests that the "real reason" was Dunbar's race. *See Reeves,* 530 U.S. at 153, 120 S.Ct. 2097 (requiring evidence of both falsity of the proffered reason and evidence that the real reason was discriminatory intent to defeat summary judgment or judgment as a matter of law). Dunbar also identifies some further evidence giving rise to an inference of racial animus in statements made to him by Van Syoc, including disputed evidence that a coworker heard Van Syoc call Dunbar a "nigger" on two occasions. Therefore, Pepsi is not entitled to summary judgment on Dunbar's purported failure to generate a genuine issue of material fact on the first, or "pretext," alter-

native at the third stage of the modified burden-shifting analysis.

*ii. Mixed-motive alternative.* However, even supposing that Dunbar's evidence is insufficient to generate a genuine issue of material fact on the falsity of Pepsi's proffered reasons, Dunbar has generated genuine issues of material fact that "a motivating factor" in his discipline and discharge was *also* his race. *See* 42 U.S.C. § 2000e–5(m) (the plaintiff prevails by showing that a protected characteristic was "a motivating factor" in the employer's conduct, "even though other factors also motivated the practice"). Dunbar has pointed to evidence that he contends is "direct evidence" of a racial animus at Pepsi. However, the court finds it unnecessary, in light of *Desert Palace*, to determine whether any of this evidence is "direct evidence" of a racial animus or merely "stray remarks," although the court finds that the evidence in question gives rise to at least some inferences of a racial animus. More telling, however, is once again Dunbar's evidence concerning different treatment of similarly situated persons not sharing his protected characteristic. This evidence generates the necessary inference that, even if Pepsi had legitimate reasons for its conduct, Dunbar's race was also "a motivating factor."

Because Dunbar has generated genuine issues of material fact on both alternatives for the final stage of the modified burden-shifting analysis, Pepsi's motion for summary judgment on Dunbar's disparate treatment claim must be denied.

### III. CONCLUSION

Upon the foregoing, Pepsi's July 1, 2003, Motion For Summary Judgment (docket no. 13) is **granted in part and denied in part.** More specifically,

1. Pepsi's motion for summary judgment is **granted** as to Dunbar's claim of a racially hostile environment in Count II of his Complaint; however,

2. Pepsi's motion for summary judgment is **denied** as to Dunbar's claim of disparate treatment in Count I of his Complaint.

**IT IS SO ORDERED.**