Tim BROWN, Plaintiff,

v.

WESTAFF (USA), INC., Defendant.

No. Civ. 02–1696 JRTJSM.

United States District Court,
D. Minnesota.

Jan. 12, 2004.

Jordan S. Kushner, Law Office of Jordan S. Kushner, Minneapolis, MN, for plaintiff.

Shane H. Anderson, Mackall, Crounse & Moore, PLC, Minneapolis, MN, for defendant.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TUNHEIM, District Judge.

Plaintiff Tim Brown ("Brown") has sued his former employer, Westaff, Inc. ("Westaff" or "defendant"), alleging: (1) unlawful termination because of his race, in violation of 42 U.S.C. § 1981 and the Minnesota Human Rights Act ("MHRA"), Minn.Stat. §§ 363 *et seq.;* and (2) defamation.[1] Westaff has moved for summary judgment on all counts. For the reasons discussed below, the Court now denies Westaff's motion in part and grants the motion in part.

## BACKGROUND

Brown was employed by Westaff, a temporary employment agency, from September 8, 1998 until January 23, 2002. He was first hired as a Staffing Coordinator in Westaff's Richfield, Minnesota office. In October 1999 Brown received a promotion to On Site Manager for Westaff's National Car Rental ("National") account and opened a new Westaff office in St. Paul to service the National account. When the National account was closed, the St. Paul office became a general office with Brown serving as Branch Manager. Throughout his employment with Westaff, Brown received evaluations of his work ranging from "meets expectations" to "far exceeds expectations."

As On Site Manager and Branch Manager, Brown managed several other employees in the St. Paul office. In early January 2002, Brown's direct supervisor, regional manager Glenn McConnach, became aware that another employee in the St. Paul office, Tomika Dearring, had a number of complaints about Brown's work and management style. Dearring's complaints included allegations that Brown belittled her, expected her to do more than her share of the work, and was frequently playing on the internet while at work. McConnach spoke with both Dearring and Brown about the conflict, and then discussed the situation with his supervisor, Jim Lareau, and the company's Human Resources Director, Joe Coute. Based on those conversations, McConnach decided to "counsel" Brown concerning the complaints and scheduled a meeting for January 24.

In preparation for the January 24 meeting, McConnach requested a review of Brown's internet and e-mail usage from the Information Services ("IS") department. On January 21 McConnach received an initial "global history" report seeming to indicate that Brown had been viewing pornography at work. On January 22 McConnach received a follow-up report indicating that, based on Brown's most recent usage records, it did not appear that he had been viewing pornogra-

---

1. Brown initially asserted a negligence claim as well, but advised the Court at a hearing held on September 25, 2003 that he would not be pursuing it further. The Court therefore does not address this claim, and dismisses it.

phy. McConnach discussed the information with Lareau and Coute and a decision was made to terminate Brown's employment with the company.

On January 23, 2002, McConnach went to Brown's office and fired him, effective immediately. McConnach told Brown that he was being terminated for viewing pornographic websites while at work. McConnach claims that Brown became verbally abusive and threatening when told that he was being fired. Brown claims that it was McConnach who was threatening. Immediately following the termination meeting, Brown called Gail Jern, a Human Resources representative who regularly dealt with employee relations issues for the company. He vigorously denied viewing pornographic websites at work and asked Jern to investigate the possibility of reinstating him and transferring him to another region where he would not be under McConnach's supervision.

The next day, McConnach sent Brown a letter ("the termination letter") acknowledging that Brown's viewing of pornography at work had not been substantiated, but affirming the termination decision due to Brown's violation of Westaff's e-mail and internet policies, "continuing intimidating management style, violation of the dress code policy, failure to request and report personal absences to [his] supervisor, and repeated tardiness" and "unprofessional and insubordinate behavior, including the use of vulgar language and the threat of physical violence toward [McConnach]." The termination letter that Brown received was the end product of several e-mail exchanges between McConnach and Jern concerning the language and format of the letter. McConnach also filled out an internal "Westaff Personnel Action Form" ("PAF") stating that Brown had been terminated for "[v]iolation of Westaff e-mail policy." The PAF was sent to various human resources department employees who were responsible for canceling Brown's benefits.

Brown asserts that McConnach hired him only after the white candidate that McConnach preferred did not work out, and that McConnach had been looking for a reason to fire him for some time. He alleges that McConnach went so far as to essentially manufacture or engineer disputes between Brown and other employees in order to further that goal. He denies ever viewing pornography at work. Brown claims that he made only minimal personal use of the internet system and was not aware that doing so might be considered a violation of company policy. Brown also asserts that he had only ordinary, minor difficulties with other employees, that McConnach approved his dress and his absences, that he was not tardy, and that it was McConnach rather than he who was threatening during the interaction in which Brown was fired. In deposition testimony, McConnach acknowledged that he had never seen Brown dressed inappropriately, but had planned to talk to him about appropriate dress based on comments from another employee. He further acknowledged that Brown could have stopped somewhere for legitimate business purposes before coming in to the office, rather than simply arriving late.

Brown has also presented evidence that he was replaced by a white employee, that the other two African–American branch managers in the region also had their positions eliminated and that no new African–American employees have been hired at that level.[2] Additionally, Westaff's answers to Brown's second set of in-

---

**2.** Westaff responds that the positions were eliminated and not re-filled for financial reasons.

terrogatories reveal that while two white employees were terminated or resigned for sending offensive or inappropriate content via e-mail (among other reasons), most non-African-American employees suspected of general violation of the company's e-mail or internet policies were more extensively investigated and then "counseled" or otherwise disciplined before being terminated.[3]

Brown asserts that his termination was racially motivated in violation of § 1981 and the MHRA. He further asserts that the exchange of e-mails concerning the termination letter and the circulation of the PAF were defamatory. Westaff moves for summary judgment on all counts on the basis that the complaint fails to state a claim of racial discrimination either under § 1981 or under the MHRA and that the statements were not defamatory because they were true and/or protected by a qualified privilege. For the reasons discussed below, the Court denies Westaff's motion for summary judgment as to the MHRA and § 1981 claims, but grants summary judgment on the defamation claim.

## ANALYSIS

### I. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir.1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir.2002).

---

**3.** Specifically, two white employees were counseled or had e-mail restricted for personal use of internet and e-mail and one white employee resigned before any action could be taken. Further, including the two who were terminated due to offensive content matter and the three employees mentioned above, eleven white and two Hispanic employees had their e-mail or internet usage checked or monitored for a variety of reasons. Of these, two were fired, two were first disciplined, and one resigned. Four were cleared of suspicion and either continued working for Westaff or apparently left voluntarily sometime later. Two were or will be fired for, among other things, forwarding confidential information outside the company. One was apparently fired for hiring irregularities. One will be fired for personal use of e-mail, low productivity and poor work performance following three to four checks of e-mail use.

## II. THE § 1981 CLAIM

■ Brown alleges that he was fired from his job at Westaff based on racial considerations, a violation of 42 U.S.C. § 1981. Recognizing that the elements of a Title VII discrimination claim and a § 1981 discrimination claim are the same, the Eighth Circuit applies the same analysis in both instances. *Roxas v. Presentation College,* 90 F.3d 310, 315 (8th Cir. 1996). Where, as here, a plaintiff supports his claims of racial discrimination only with indirect evidence, the Court has long applied the familiar three-step burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Id.*

Under *McDonnell Douglas,* the plaintiff first is required to establish a prima facie case of discrimination. The burden of production then shifts to defendant to assert a legitimate reason for the allegedly discriminatory action. If the defendant is able to do so, the burden shifts back to the plaintiff to establish that the asserted legitimate reason was merely a pretext for a discriminatory action. This framework applies in cases supported by circumstantial evidence, and permits only two possible outcomes: either the defendant's asserted legitimate reason is believed, and the defendant prevails, or the defendant's reason is disbelieved, and the plaintiff prevails. *See Mohr v. Dustrol, Inc.,* 306 F.3d 636, 640–41 (8th Cir.2002).

Where a plaintiff presents direct evidence of discrimination, an alternative analysis derived from *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), is performed. *Mohr,* 306 F.3d at 640–41. Only under *Price Waterhouse* can the plaintiff proceed with a mixed-motive theory—i.e., that although the defendant's asserted legitimate reason

was true, the action was nevertheless taken because of an impermissible consideration. *Mohr,* 306 F.3d at 639–40 (citing *Price Waterhouse,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (generally); *Gagnon v. Sprint Corp.,* 284 F.3d 839, 847–49 (8th Cir.2002)).

The Supreme Court's recent decision in *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), called into question the continued applicability of the two different analyses.[4] The Court analyzed 42 U.S.C. § 2000e–2(m), part of the 1991 Civil Rights Act, and concluded that a Title VII plaintiff need not present direct evidence of discrimination in order to either obtain a mixed-motive jury instruction or to establish liability in a mixed motive case. *Desert Palace,* 539 U.S. at ———–———, 123 S.Ct. at 2154–55. The Court thus explicitly eliminated the distinction between circumstantial and direct evidence drawn from *Price Waterhouse,* emphasizing that one was just as valid as the other. *Id.*

District courts around the country have attempted to discern the potential broader impact of *Desert Palace.* The results, even within this Circuit, have not been uniform. Some courts have persuasively reasoned that elimination of the evidentiary distinction requires that the *McDonnell Douglas* framework be dropped in favor of the more straightforward process laid out in § 2000e–2(m). *See, e.g., Dare v. Wal–Mart Stores, Inc.,* 267 F.Supp.2d 987, 990–93 (D.Minn.2003). Other courts have determined that *Desert Palace* requires that *McDonnell Douglas* be modified, but not abandoned completely. *See Dunbar v. Pepsi–Cola General Bottlers of Iowa, Inc.,* 285 F.Supp.2d 1180, 1194–96 (N.D.Iowa 2003). The Eighth Circuit has declined to reach the issue of whether *Desert Palace*

---

4. The Supreme Court affirmed the Ninth Circuit's opinion, which is found at 299 F.3d 838.

alters the *McDonnell Douglas* burden-shifting analysis and continues to apply *McDonnell Douglas*. *See Allen v. City of Pocahontas*, 340 F.3d 551, 558 n. 5 (8th Cir.2003) ("Without reaching the issue as to whether the Supreme Court's refocus on the statutory language of the Civil Rights Act of 1991 alters the burden-shifting analysis of *McDonnell Douglas*, the result in this case remains the same.").

This Court believes that while *Desert Palace* necessarily impacts the *McDonnell Douglas* framework, it does not necessitate abandoning it altogether.[5] The *McDonnell Douglas* framework, which applies primarily at the summary judgment stage, is an evidentiary framework designed as "a tool to assist plaintiffs ... so that they may reach trial." *Desert Palace*, 299 F.3d 838, 855 (9th Cir.2002). The first step, the prima facie case, "eliminates the most common nondiscriminatory reasons for the plaintiff's rejection," creating a presumption of discriminatory treatment that the defendant may then rebut in the second step. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff at all times, however, retains the burden of "persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Id.* at 253, 101 S.Ct. 1089. The third step in the *McDonnell Douglas* framework addresses the plaintiff's ability to carry his burden. It is only this third step that, after *Desert Palace*, can no longer be applied in the traditional manner.

Title VII, as amended by the 1991 Act, makes clear that "an unlawful employment practice is established when the complaining party demonstrates that race ... was a motivating factor for any employment practice, *even though other factors also motivated the practice.*" 42 U.S.C. § 2000e–2(m) (emphasis added); *see also Desert Palace*, 539 U.S. at ——, 123 S.Ct. at 2151 (quoting the statute). The Supreme Court clarified that "a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence that race ... was a motivating factor for any employment practice." *Id.* at 2155 (internal quotation omitted). As the court noted in *Dunbar*, this is the same standard applied to a motion for summary judgment. 285 F.Supp.2d at 1194 (comparing language to *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Thus, in order to survive summary judgment, a plaintiff is not limited to demonstrating pretext, i.e., that the defendant's asserted reason was false, as under traditional *McDonnell Douglas* analysis. Rather a plaintiff need only present sufficient evidence, of any type, for a jury to conclude that a protected characteristic was a "motivating factor" for the employment practice, even though the defendant's legitimate reason may also be true or have played some role. The third *McDonnell Douglas* step must therefore be modified "so that it is framed in terms of whether the plaintiff can meet his or her ultimate burden to prove intentional discrimination, rather than in terms of whether the plaintiff can prove pretext." *Dunbar*, at 1196 (citations omitted).

In this case, plaintiff Brown has presented a mixed-motive case. Brown admits that he made personal use of the internet at work, but alleges that race was the motivation for his dismissal. Therefore, the Court must take *Desert Palace* into account.[6] In light of the above reasoning,

---

**5.** The Court notes that the Court in *Dare v. Wal–Mart* did not have the benefit of *Allen* when it issued its decision.

**6.** Although *Desert Palace* addressed only mixed-motive cases, this Court agrees with the determination in *Dare v. Wal–Mart* that its

and the Eighth Circuit's continuing application of *McDonnell Douglas, see Allen,* 340 F.3d at 557–58, this Court will continue to apply *McDonnell Douglas,* modified in its third stage to accommodate *Desert Palace.*[7]

*McDonnell Douglas* requires a plaintiff to first establish a prima facie case of racial discrimination by demonstrating that (1) he is a member of a protected class; (2) he was qualified for the job in question; (3) he suffered an adverse employment action; and (4) the facts permit an inference of discrimination. *Taylor v. Southwestern Bell Telephone Co.,* 251 F.3d 735, 740 (8th Cir.2001). The burden then shifts to the employer, who must provide a "legitimate, nondiscriminatory reason" for the employee's dismissal or rejection. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. As defendant's burden is one of production, the asserted reasons need only be facially reasonable—not proven. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Traditionally, if defendant is able to satisfy this second step, plaintiff must then demonstrate that the employer's stated reason was merely a pretext for a discriminatory reason or motive. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817. After the modification that this Court believes is necessary in light of *Desert Palace,* the third step requires plaintiff to demonstrate that race was a motivating factor in the employment action at issue.

## A. Plaintiff's Prima Facie Case

 In this case, Brown has clearly established the first three elements of his prima facie case. He is African–American, and therefore a member of a protected class; his performance evaluations indicate that he was qualified for his job; and he was fired from his job. Although it is a more difficult question, the Court finds that Brown has also established the fourth element by alleging facts sufficient to permit an inference of discrimination.

It is undisputed that Brown was replaced in his position by a white female. Brown has also submitted evidence that all of the African–American managers in the region were involuntarily terminated. Additionally, most other non-African-American company employees found making personal use of the internet and e-mail were merely "counseled" and/or had their internet and e-mail usage monitored instead of or before being terminated.[8] This evidence adequately supports an inference of discrimination sufficient to shift the burden to Westaff.

## B. Defendant's Legitimate Reason

 In order to meet its burden, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Center,* 509 U.S. at 507, 113 S.Ct. 2742 (internal quotation marks and

reasoning applies equally to single motive cases. 267 F.Supp.2d at 991.

7. The Court also notes that the Supreme Court did not explicitly discuss *McDonnell Douglas* in its opinion.

8. Westaff points to a white employee in the St. Paul office who was viewing pornography at work and was immediately terminated.

Westaff claims this white employee was a person similarly situated to Brown who was treated in the same manner. However, in light of the possibility that plaintiff was not viewing pornography, the Court finds that a more appropriate comparison is to other employees found making personal use of e-mail or internet, but not necessarily viewing pornography.

citation omitted). Westaff has met its burden by alleging both violation of company internet policy and inappropriate and insubordinate behavior as the legitimate, non-discriminatory basis for Brown's termination. Specifically, the IS department review of Brown's internet usage revealed, and Brown admitted in deposition testimony, that he had visited non-work related internet sites while at work. Westaff documents and testimony demonstrate that this was contrary to company policy. Westaff also submitted copies of notes and testimony concerning problems with Brown's management style and relations with other employees. Further, McConnach testified that he felt threatened by Brown during the interaction in which Brown was fired. This evidence, if believed, would permit a finding that Westaff acted lawfully in terminating Brown's employment.

## C. Plaintiff's Ultimate Burden

In this final stage, plaintiff must present sufficient evidence that a reasonable jury could conclude that race was a motivating factor in the employment action in question. One means of doing so would be to prove that the defendant's asserted legitimate reason for the action was false, or merely a pretext. Thus, evidence sufficient to demonstrate pretext under the traditional *McDonnell Douglas* analysis will also be sufficient under the modified version, even where evidence indicates that the defendant's asserted legitimate reason is at least partly true.

Evidence relevant to a finding of pretext might include that similarly situated white employees were treated differently, the employer's treatment of the employee during his employment, or the employer's general policy and practice regarding minority employment and employees. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817. "When a party asserts a false motive for its actions, 'the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.'" *Hannoon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1046 (8th Cir.2003) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

As discussed above, Brown has provided evidence that non-African-American employees were counseled and/or more thoroughly investigated before being fired and that all of the other African–American managers in the region were terminated. Additionally, Brown has presented evidence contradicting Westaff's alleged reasons for the termination.

In the termination letter, Westaff affirmed Brown's termination citing "continuing intimidating management style, violation of the dress code policy, failure to request and report personal absences to your supervisor, and repeated tardiness" and "unprofessional and insubordinate behavior, including the use of vulgar language and the threat of physical violence toward [McConnach]." Brown disputes each of these reasons. He asserts that he was not intimidating and had no more than ordinary difficulties establishing a supervisor/supervisee relationship with other employees in the St. Paul office. He also testified that McConnach approved his dress and his absences, and that because of the large number of hours he worked and the frequency with which he visited clients, his hours were often irregular. Brown further asserts that he protested to McConnach that the pornography charge was "bull shit," but was not otherwise vulgar or violent. Additionally, Brown presented McConnach's deposition testimony in which he stated that he had not ever seen Brown dressed inappropriately and agreed that Brown might have arrived late

to the office because of legitimate company business.

Taking this evidence in the light most favorable to the plaintiff, as the Court must for purposes of this motion, Brown has adequately demonstrated a genuine issue of material fact as to whether non-African-American employees were treated differently than he was, whether Westaff may have treated African–American employees unfavorably and whether Westaff may have given untruthful reasons for Brown's termination. This showing is sufficient to create a triable question as to whether the reasons presented by Westaff for his termination were a pretext for an unlawful racially based action, and to permit a reasonable jury to conclude that Brown's race was a motivating factor in his termination by Westaff. The Court therefore denies Westaff's motion for summary judgment on the § 1981 claim.

### III. The Minnesota Human Rights Act Claim

Brown also alleges violation of the Minnesota Human Rights Act ("MHRA"). Minnesota has adopted the *McDonnell Douglas* framework for use in MHRA cases, and unless the Minnesota state courts adopt *Desert Palace*, MHRA cases are not affected by the Supreme Court's holding in *Desert Palace*. *See Anderson v. Hunter, Keith, Marshall & Co., Inc.*, 417 N.W.2d 619, 623 (Minn.1988). The Court previously determined that Brown established a prima facie case of discrimination, that Westaff articulated a legitimate reason for Brown's termination, and that Brown presented sufficient evidence to permit a jury to conclude that Westaff's asserted reasons were a pretext. These conclusions dictate denial of Westaff's mo-

tion for summary judgment on the MHRA claim as well.

### IV. Defamation

■■■ "In order for a statement to be considered defamatory it must be communicated to someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's reputation and to lower him in the estimation of the community." *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980). Truth is a complete defense to a defamation claim. *Id.* That the defendant holds a qualified privilege is also a complete defense. *Id.* at 256. In order to be privileged, a statement must "be made on a proper occasion and for a proper purpose, and be based upon reasonable or probable grounds ... even if it later proves to be false." *Palmisano, II v. Allina Health Systems, Inc.*, 190 F.3d 881, 885 (8th Cir.1999) (citing *Lewis v. Equitable Life Assurance Soc'y*, 389 N.W.2d 876, 889–90 (Minn.1986)). Whether a statement is privileged is a question of law. *Id.* The plaintiff may overcome a finding of conditional privilege by proving actual malice. *Id.*

#### A. Qualified Privilege

■■■ Brown identifies the e-mail messages between McConnach and Jern regarding the termination letter and the PAF as defamatory statements. Each was clearly communicated to someone other than Brown. However, even assuming that each statement was false and that Brown was harmed by the statements, the Court finds that they were nevertheless privileged.[9]

■■■ Each of the statements in question was made to either McConnach's

---

9. The Court also notes that the statement in the PAF that Brown "[violated] Westaff's internet policy" was true and therefore cannot be defamatory. Brown admitted visiting non-work related internet sites while at work. Westaff documents show that this violated company policy.

supervisor or human resources personnel in the context of making personnel changes and for the purpose of choosing appropriate and correct language or updating personnel records. They were thus clearly made "on a proper occasion" and "for a proper purpose." Brown asserts that Westaff did not have proper or reasonable grounds for making the statements. "Reasonable grounds can exist if a person has valid reasons for believing a statement, even though the statement later proves to be false." *Elstrom v. Independent Sch. Dist. No. 270,* 533 N.W.2d 51, 55 (Minn.Ct.App.1995). In determining whether an employer had reasonable grounds for making an allegedly defamatory statement, Minnesota courts have looked to whether investigative steps were taken to determine the accuracy of the statements. *Wirig v. Kinney Shoe Corp.,* 461 N.W.2d 374, 380 (Minn.1990). "[A]n employer who takes no steps to investigate but relies entirely on accusations either made by employees who may be biased or on second-hand hearsay with no identification of sources ... lacks probable or reasonable grounds for making a potentially defamatory statement." *Id.*

Westaff claims to have primarily relied on the internet usage reports provided by the IS department showing visits to both pornography and other non-work related sites. Westaff also points to statements from several other employees and certain comments on Brown's performance evaluations indicating problems with Brown's management skills. McConnach also personally called Brown's office daily for a period of time in order to determine when Brown was arriving at the office. While the second internet usage report that McConnach received stated that a second check of Brown's internet usage did not show recent pornography use, McConnach could reasonably have understood the two reports to indicate that Brown had in the past viewed pornography on the internet

at work, but had not done so recently. Although McConnach could have conducted a more thorough investigation, the information he had available to him and the actions he took to corroborate the most serious allegations against Brown are sufficient to entitle Westaff to the qualified privilege with regards to both documents.

### B. Malice

■■■■ Brown claims that even if the statements might otherwise be privileged, there should be no privilege applied because the statements were made with actual malice. To demonstrate actual malice, the plaintiff must prove "that the defendant made the statement from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." *Id.* (citation omitted). This is a question of fact, but should not be submitted to the jury if there is insufficient evidence to support a finding of malice. *Buchanan v. Minnesota State Dept. of Health,* 573 N.W.2d 733, 738 (Minn.Ct. App.1998). "Malice may be proved by extrinsic evidence of personal ill feeling, or by intrinsic evidence such as the exaggerated language of the libel, the character of the language used, the mode and extent of publication, and other matters in excess of the privilege." *Frankson v. Design Space International,* 394 N.W.2d 140, 144 (Minn. 1986) (internal quotation omitted).

Brown states that malice can be inferred from the fact that McConnach initially hired another applicant rather than Brown and may have been considering terminating Brown for a period of time before doing so, from McConnach's failure to more carefully investigate the information he used to justify firing Brown, and from McConnach's failure to discipline or counsel Brown prior to firing him. The Court notes, however, that there is no actual evidence of any ill will between McCon-

nach and Brown. The language used in the allegedly defamatory statements was straightforward and was not exaggerated. The termination letter, which acknowledged that the most inflammatory charge against Brown had not been substantiated, was published only to company executives involved in the termination process and Brown himself. The PAF, which referred only to a violation of company policy, was similarly published only to necessary personnel department employees. In short, Westaff's behavior with regard to the allegedly defamatory statements was not excessive. Brown fails to present sufficient evidence of malice to create a triable issue, and summary judgment is therefore granted in favor of the defendant.

### ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment [Docket No. 29] is **GRANTED IN PART and DENIED IN PART** as follows:

1) Defendant's motion for summary judgment is **GRANTED** as to plaintiff's claims of defamation and negligence of the complaint [Docket No. 1]. These claims are **DISMISSED with prejudice.**

2) Defendant's motion for summary judgment is **DENIED** in all other respects.