Dennis ORDAHL, Plaintiff,

v.

**FORWARD TECHNOLOGY INDUSTRIES, INC.,**
Defendant.

**No. CIV.02–1014 JRT/FLN.**

United States District Court,
D. Minnesota.

Feb. 4, 2004.

1024

M. William O'Brien and Justin D. Cummins, Miller O'Brien, Minneapolis, MN, for plaintiff.

David P. Pearson and Anton J. Moch, Winthrop & Weinstine, P.A., Minneapolis, MN, for defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TUNHEIM, District Judge.

Plaintiff Dennis Ordahl ("Ordahl") was employed by defendant Forward Technology Industries, Inc. ("FTI") as a machinist until his employment was terminated in August 2000. Ordahl claims that he was unlawfully terminated by FTI in violation of the Americans with Disabilities Act (the "ADA") and the Minnesota Human Rights Act ("MHRA"). FTI asserts that Ordahl is not disabled and was never regarded or treated as disabled as that term is defined in the ADA. FTI further argues that Ordahl's employment was terminated for legitimate reasons and that even if Ordahl had remained employed at FTI, his employment would necessarily have been terminated on May 31, 2000 when the Plymouth facility where Ordahl worked was closed. They therefore request that any potential damages be limited accordingly.

## I. BACKGROUND

At age 15 Ordahl suffered an accident that severed his vena cava vein and resulted in the amputation of his left hand and part of his arm. As a result of these injuries, Ordahl uses a prosthetic hand and suffers from a circulatory condition known as venous stasis disease.[1] Both conditions are permanent. According to Ordahl, his amputation affects his ability to bathe, dress, eat, grasp, and perform actions requiring manual dexterity, participate in re-

---

1. The inferior vena cava vein is the largest vein in the human body, and returns blood to the right atrium of the heart from the lower body parts. 6 J.E. Schmidt, *Attorneys' Dictionary of Medicine and Word Finder* V–52 (2002). Venous stasis is a circulatory condition causing stagnation of blood in the veins. *Id.* at V–71.

creational activities such as sports, and engage in physical touching and sexual activity. Ordahl's circulatory condition affects his ability to walk, stand, sit, and participate in recreational activities.

Ordahl was first employed by FTI in 1979 as a machinist, at which time Ordahl informed FTI of his impairments. According to Ordahl, during his tenure at FTI he worked on a variety of machines performing all of the main machining functions, and at the time of his dismissal was capable of operating any machine in the workshop. In 1998, FTI began purchasing new, more sophisticated machines that required less manual operation and more computer programming skill. According to Ordahl, he repeatedly requested computer training on the new machines, particularly the "Tacumi," but was turned down by management. According to Ordahl and a former FTI manager, the management did not think that Ordahl was a good candidate to operate the new machines because he did not have two hands. Eventually, shortly before he was terminated, management offered Ordahl part time computer related training.[2]

In 2000, FTI was sold to new owners who instituted a number of cost-cutting measures including extensive layoffs, closure of the Plymouth facility that Ordahl worked at, and outsourcing of various kinds of work. According to FTI, Ordahl's department, the machining department, had three product lines. With the close of the Plymouth facility, two of the product lines, cleaning and ultrasonic, were either outsourced or eliminated, and the relevant employees terminated. The remaining line, plastic welding, moved to a new facility in Cokato.

FTI terminated Ordahl's employment on August 8, 2000, allegedly for violating a company policy against working on personal projects at work while still on the clock. Ordahl denies having violated the policy, and asserts that his termination was improperly motivated by his disability.

## II. ANALYSIS

### A. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of

---

**2.** Specifically, Ordahl received 30 minutes of CAD/CAM training from a fellow employee each day for several weeks. It appears from the record that this training would have been useful in operating existing machines and might also have been one step towards operating the new machines. However, more training would have been required in order for Ordahl to operate the new machines. After several weeks, workload at the company increased to a point where neither Ordahl nor the trainer-employee could afford to spend 30 minutes on training.

material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076, 1077 (8th Cir.1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Forrest v. Kraft Foods, Inc.,* 285 F.3d 688, 691 (8th Cir.2002).

## B. ADA

The ADA prohibits employers from discriminating against any "qualified individual with a disability" because of that disability. 42 U.S.C. § 12112(a). Where, as here, a plaintiff alleges discriminatory disparate treatment,[3] the Court applies the familiar burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Fenney v. Dakota, Minnesota & Eastern Railroad Co.,* 327 F.3d 707, 711–12 (8th Cir.2003). Under this framework, the plaintiff initially bears the burden of establishing each element of the prima facie case. *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1134 (8th Cir. 1999) (en banc). The second step of the analysis requires the employer to "rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 1135. The third step traditionally "shifts [the burden] back to the plaintiff to demonstrate that the employer's non-discriminatory reason is pretextual." *Id.*

In *Desert Palace, Inc. v. Costa,* the Supreme Court analyzed 42 U.S.C. § 2000e–2(m), part of the 1991 Civil Rights Act, and concluded that a Title VII plaintiff need not present direct evidence of discrimination in order to either obtain a mixed-motive jury instruction or to establish liability in a mixed motive case. 539 U.S. 90, 123 S.Ct. 2148, 2154–55, 156 L.Ed.2d 84 (2003). As this Court noted in *Brown v. Westaff (USA), Inc.,* 2004 WL 67654 (D.Minn.2004), courts have attempted to discern the potential broader impact of *Desert Palace,* and have come to multiple conclusions. Some courts have persuasively reasoned that *Desert Palace* requires that the *McDonnell Douglas* framework be dropped in favor of the more straightforward process laid out in § 2000e–2(m). *See, e.g., Dare v. Wal–Mart Stores, Inc.,* 267 F.Supp.2d 987, 990–93 (D.Minn.2003). Noting that multiple federal anti-discrimination laws are patterned after Title VII and are evaluated similarly, this reasoning has been extended to other contexts, including the ADA. *LeClair v. Wells Fargo Bank Iowa, N.A.,* 291 F.Supp.2d 873, 879–80 (S.D.Iowa 2003) (following *Skomsky v. Speedway SuperAmerica, L.L.C.,* 267 F.Supp.2d 995, 998–1000 (D.Minn.2003)).

Other courts have determined that *Desert Palace* requires that *McDonnell Douglas* be modified, but not abandoned completely. *See Brown v. Westaff,* 2004 WL 67654, at *4–5; *Dunbar v. Pepsi–Cola General Bottlers of Iowa, Inc.,* 285 F.Supp.2d 1180, 1195–97 (N.D.Iowa 2003); *see also Rishel v. Nationwide Mut. Ins. Co.,* 297 F.Supp.2d 854, 864–67 (M.D.N.C. 2003) (following *Dunbar* in ADA context).

The Eighth Circuit has declined to reach the issue of whether *Desert Palace* alters the *McDonnell Douglas* burden-shifting

---

**3.** In the complaint, Ordahl alleges disparate treatment, refusal to accommodate, retaliation, and improper termination. The record and the arguments of the parties, however, make clear that this case focuses on disparate treatment.

analysis and continues to apply *McDonnell Douglas. See Allen v. City of Pocahontas,* 340 F.3d 551, 558 n. 5 (8th Cir.2003) ("Without reaching the issue as to whether the Supreme Court's refocus on the statutory language of the Civil Rights Act of 1991 alters the burden-shifting analysis of *McDonnell Douglas,* the result in this case remains the same."); *see also Raytheon Co. v. Hernandez,* —— U.S. ——, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003) (noting that *McDonnell Douglas* is properly applied to disparate treatment cases under the ADA); *Peebles v. Potter,* 354 F.3d 761, 2004 WL 35070 (8th Cir.2004) (same).

■ As explained more fully in *Brown v. Westaff,* this Court believes that *Desert Palace* necessitates modifying the third step of the *McDonnell Douglas* framework "so that it is framed in terms of whether the plaintiff can meet his or her ultimate burden to prove intentional discrimination, rather than in terms of whether the plaintiff can prove pretext." 2004 WL 67654, *4–5 (quoting *Dunbar,* 285 F.Supp.2d at 1197). In other words, in order to survive summary judgment under the *McDonnell Dauglas* analysis, a plaintiff is no longer limited to demonstrating pretext, i.e. that the defendant's asserted reason was false. Rather, at step three, a plaintiff need only present sufficient evidence, of any type, for a jury to conclude that the plaintiff's disability was a "motivating factor" for the employment action, even though the defen-

dant's legitimate reason may also be true or have played some role.

### 1. Ordahl's prima facie case

■ To establish a prima facie case of discrimination under the ADA, a plaintiff must show (1) that he has a disability within the meaning of the ADA, (2) that he is qualified to perform the essential functions of his job, with or without reasonable accommodation, and (3) that he suffered an adverse employment action because of his disability. *Kiel,* 169 F.3d at 1135. FTI does not appear to dispute that Ordahl is qualified, or that he suffered an adverse employment action, namely termination. Thus, the key inquiry is whether Ordahl is disabled as that term is defined under the ADA.

The ADA offers several definitions of "disability," including "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual ..."[4] 42 U.S.C. § 12102(2)(A). FTI does not dispute that Ordahl's amputation and circulatory disease qualify as physical impairments. *See* 29 C.F.R. § 1630.2(h). However, FTI strongly disputes whether those impairments substantially limit any of Ordahl's major life activities.

Caring for oneself, performing manual tasks, walking, seeing, hearing, breathing, learning, and working all qualify as major life activities. 45 C.F.R. § 84.3(j)(2)(ii);

---

4. The ADA fully defines a "disability" as either:
   (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
   (B) a record of such an impairment; or
   (C) being regarded as having such an impairment.
   42 U.S.C. § 12102(2) (1994). Ordahl also asserts that he meets subparts (B) and (C). Because the Court finds that Ordahl raises a question of material fact as to whether he is

disabled under subsection (A), the Court does not address this contention. However, the Court notes that the evidence in the record indicating that Ordahl, despite his experience and positive work evaluations, was not, at least initially, considered a candidate to operate the new machines purchased by FTI appears sufficient to create a question of material fact as to whether FTI regarded Ordahl as impaired and to raise an inference of discriminatory treatment.

see also *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); *Fenney,* 327 F.3d at 714. Sitting, standing, lifting, and reaching have also been found to be major life activities. *Fjellestad v. Pizza Hut of America, Inc.,* 188 F.3d 944, 948 (8th Cir.1999). Ordahl alleges that his impairments affect, among other things, his ability to care for himself, perform manual tasks, walk, sit, and stand.

An individual is "substantially limited" by his impairment if the impairment "prevents or severely restricts" his ability to accomplish a major life activity, as compared to the way in which unimpaired individuals normally accomplish the same major life activity.[5] *Fenney,* 327 F.3d at 714–15 (quoting *Toyota,* 534 U.S. at 198, 122 S.Ct. 681). Ordahl testified in deposition and stated in his affidavit that the activities of dressing, bathing, and carrying plates and glasses are substantially more difficult with his amputated hand/prosthesis than those activities were prior to the amputation. According to Ordahl, dressing himself takes twice as long as it would an unimpaired person. Ordahl also testified that his circulatory condition prevents him from either sitting or standing still for very long. The condition periodically causes ulcerated sores on his legs that make walking difficult and painful. Additionally, the need to care for the sores on his legs and attendant pain lengthens the amount of time it takes him to care for himself in the morning.

FTI has presented substantial evidence of the degree to which Ordahl has managed to overcome and compensate for his impairments. He has maintained a full-time job for many years, has friends and a family, and leads what is, in many ways, a "normal" life. FTI asserts that all of this evidence indicates that Ordahl cannot be considered disabled under the ADA.

The Court disagrees. The ADA does not require that a plaintiff demonstrate total inability to perform daily activities in order to be considered disabled. Rather, the central inquiry is whether, when compared to the activities of a non-impaired person, the plaintiff is substantially restricted in his ability to perform those same activities.

The Eighth Circuit's recent opinion in *Fenney* is instructive. In *Fenney,* the Eighth Circuit determined that a plaintiff with a damaged hand and arm who presented evidence that it took him twice as long to perform "taking care of himself tasks" such as bathing, shaving, preparing a meal, dressing, and going to the restroom had presented sufficient, albeit thin, evidence "that his impairment severely restricted his ability to care for himself compared with how an unimpaired individual would normally care for himself or herself in daily life." 327 F.3d at 715–16. The court noted that the defendant had failed to offer contradicting evidence and found that Fenney's evidence, viewed in the light most favorable to him, created a reasonable inference from which an issue of material fact could be drawn concerning the extent to which his impairment limited his ability to care for himself. *Id.*

FTI argues that this case is distinguishable from *Fenney* because it, unlike the *Fenney* defendant, has presented evidence contradicting Ordahl's claims of disability. Its argument is inapposite. None of the evidence presented by FTI necessarily contradicts Ordahl's statements concerning the difficulty with which he carries out his

---

5. This standard applies to all major life activities except the major life activity of working, which requires a separate analysis. *Fenney,* 327 F.3d at 715, n. 15 (citing *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)). Ordahl does not allege that he is substantially restricted in his ability to work.

major life activities. That Ordahl, through sheer force of will, learned accommodations, and careful planning, is able to perform a wide variety of activities despite his physical impairments does not mean that those activities are not substantially more difficult for him that they would be for an unimpaired individual. The Court therefore finds that Ordahl has successfully made out a prima facie case of discrimination under the ADA.

### 2. FTI's legitimate reason

■ In order to meet its burden, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Center,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (internal quotation marks and citation omitted). FTI asserts, and has presented evidence, that Ordahl was dismissed for working on a personal project, at work, while still on the clock, without permission. According to FTI, this is against company policy. The Court is satisfied that FTI has met its burden of presenting a facially non-discriminatory reason for Ordahl's termination.

### 3. Ordahl's ultimate burden

In this final stage, Ordahl must present sufficient evidence that a reasonable jury could conclude that his disability was a motivating factor in his termination. One means of doing so would be to prove that the defendant's asserted legitimate reason for the action was false, or merely a pretext. Thus, evidence sufficient to demonstrate pretext under the traditional *McDonnell Douglas* analysis, will also be sufficient under the modified version, even where evidence indicates that the defendant's asserted legitimate reason is at least partly true.

Evidence relevant to a finding of pretext might include that similarly situated unimpaired employees were treated differently, the employer's treatment of the employee during his employment, or the employer's general policy and practice regarding disabled employees. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817.

As discussed above, Ordahl has provided evidence that working on personal projects at work was common among the machinists, but no unimpaired employee had been terminated, or even disciplined, for doing so. Additionally, Ordahl has presented testimony that FTI managers considered his prosthesis an impediment to operating new machinery acquired by the company. Taking this evidence in the light most favorable to the plaintiff, as the Court must, Ordahl has presented evidence sufficient to create a triable question as to whether the reasons presented by FTI for his termination were a pretext for an unlawful discriminatory action, and to permit a reasonable jury to conclude that Ordahl's disability was a motivating factor in his termination by FTI. The Court therefore denies FTI's motion for summary judgment on the ADA claim.

### C. MHRA

■ The MHRA largely parallels the ADA, *Maziarka v. Mills Fleet Farm, Inc.* 245 F.3d 675, 678 n. 3 (8th Cir.2001), with one exception. Under the MHRA, a person is considered disabled if he "(1) has a physical, sensory, or mental impairment which *materially* limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." Minn.Stat. § 363A.03, subd. 12 (emphasis added). A "material" limitation is different from and less stringent than the "substantial" limitation required by the ADA. *Hoover v. Norwest Private Mortg. Banking,* 632 N.W.2d

534, 543 (Minn.2001) (citing *Sigurdson v. Carl Bolander & Sons, Co.*, 532 N.W.2d 225, 228 & n. 3 (Minn.1995)). In light of the above conclusion that Ordahl has met the more stringent federal standard, the Court also finds that Ordahl has met his burden with respect to his MHRA claim and that summary judgment is therefore inappropriate.

### D. Damages

 A prevailing claimant under the ADA is presumptively entitled to compensatory damages in the form of back pay that would have accrued from the termination date to the entry of judgment. 42 U.S.C.A. §§ 12101 *et seq; see also Forshee v. Waterloo Industries, Inc.*, 178 F.3d 527, 530–31 (8th Cir.1999). A prevailing claimant may also be entitled to equitable relief, including front pay, designed to address the claimant's equitable needs, "including the ability to obtain employment with comparable compensation and responsibility." *Ollie v. Titan Tire Corp.*, 336 F.3d 680, 687 (8th Cir.2003).

FTI contends that it had eliminated most positions at its Plymouth facility including Ordahl's former position and, indeed, his entire department by May 31, 2002. FTI asserts that Ordahl could not have been employed by FTI after that date and therefore is not, as a matter of law, entitled to back pay following that date or to any front pay. Ordahl responds that as of August 15, 2002, FTI still had thirteen employees in the machining, tooling, and ultrasonic areas, albeit in Cokato.[6] Ordahl testified that he was capable of working in any of those areas. In light of Ordahl's more than twenty-year history at FTI, and the evidence that some jobs apparently fitting Ordahl's skills were transferred to Cokato but not eliminated, the Court cannot find as a matter of law that had Ordahl remained employed by FTI he

would not have been one of the experienced, senior employees asked to move from the Plymouth facility to the new Cokato facility. *See Forshee,* 178 F.3d at 530–31 (finding that damages for time period after termination of all temporary employees was adequately supported by speculative theory that temporary employee might have been hired as full-time employee). Without more conclusive evidence to the contrary, the Court finds that Ordahl has established a genuine issue of material fact as to whether he actually would have been terminated on May 31, 2002, precluding summary judgment limiting any possible damage award.

### ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 18] is **DENIED.**

---

**6.** Cokato is approximately 40 miles from   Plymouth.